Filed 8/30/24  In re N.C. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re N.C., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B334904 (Super. Ct. No. 23JV00048) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES, Plaintiff and Respondent, v. A.C. et al., Defendant and Appellant. | |

A.C. (Father) and S.O. (Mother) appeal from the juvenile court's order terminating parental rights to their minor son, N.C. (Welf. & Inst. Code,[1] § 366.26.)  They contend the court failed to ensure that Santa Barbara County Child Welfare Services (CWS)

_____

[1] Statutory references are to the Welfare and Institutions Code.

complied with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related provisions of California law (§ 224.2). We agree, and remand for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

N.C. was born in June 2022. He was placed in foster care eight months later. Prior to the detention hearing a CWS social worker asked Mother, who has six siblings, if her family had any Indian ancestry. She said that it did not, but thought that Father's family might. Father, who has 12 siblings, denied any such ancestry to another social worker.

In February 2023, Mother filed a Parental Notification of Indian Status (ICWA-020) form indicating that she had no Indian ancestry. She again denied such ancestry when asked by county counsel at the detention hearing. No similar inquiry was made of the maternal grandmother, who was present at the hearing.

The juvenile court ordered N.C. detained at the conclusion of the hearing. Later that month, N.C.'s maternal grandmother and one of his maternal aunts told a CWS social worker that their family had no Indian ancestry. CWS knew that N.C. lived with one of his maternal uncles, but the social worker did not ask him about the family's Indian ancestry. CWS also knew that N.C. had at least four other maternal aunts and uncles and one maternal great-grandmother, but the social worker did not ask them about their ancestry.

The paternal grandmother told the social worker that her family had Cherokee ancestry, but that she was not a registered member of the tribe; the last time anyone from the family had contacted the tribe they were told they were not eligible for membership. The social worker made one attempt to contact the

2

paternal grandfather regarding his family's ancestry, but he was unavailable. She was able to contact a paternal uncle, who denied any Indian ancestry. The record does not indicate that the social worker made any additional attempts to contact the paternal grandfather or that she attempted to contact any of Father's 11 other siblings. CWS nonetheless advised the juvenile court there was no reason to believe N.C. had Indian ancestry.

A maternal second cousin accompanied Mother to the jurisdictional hearing in March. N.C. was declared a dependent of the juvenile court at the conclusion of that hearing and removed from Mother's care. The court ordered that Mother be provided with reunification services. Services for Father were bypassed due to his incarceration.

In August, the Cherokee Nation of Oklahoma told CWS that N.C. was not an Indian child, as defined by ICWA. The following month, the United Keetoowah Band of Cherokee Indians and the Eastern Band of Cherokee Indians said that N.C. was neither a member of nor eligible for membership in their respective tribes.

At the six-month review hearing, the juvenile court found that ICWA did not apply. The court also found that Mother had not complied with her case plan. It terminated reunification services and set the matter for a selection and implementation hearing. At that hearing the court found clear and convincing evidence that N.C. would be adopted, and terminated Mother's and Father's parental rights.

## DISCUSSION

Mother and Father contend the case should be remanded for compliance with ICWA's inquiry requirements. We agree.

For purposes of ICWA, an "Indian child" is a child who either is a "member of an Indian tribe" or "is eligible for membership in an Indian tribe" because they are the biological child of a tribe member. (25 U.S.C § 1903; see also § 224.1, subd. (a) [adopting federal definition].) There is an "affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child" (§ 224.2, subd. (a))—a duty that rests with the juvenile court and child services agency, not the child's parents or family members (*In re Dezi C.* (Aug. 19, 2024, S275578) __ Cal.5th __, __ (*Dezi C.*) [slip opn. at p. 11]). This duty "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566; see *Dezi C.*, at pp. __-__ [slip opn. at pp. 12-15].)

At issue here are the child services agency's duties of initial and further inquiry. The former requires CWS to "ask[] the child, parents, legal guardian, Indian custodian, extended family members, [and any] others who have an interest in the child . . . whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) Extended family members include the child's grandparents, stepparents, aunts and uncles, siblings, siblings-in-law, first and second cousins, and nieces and nephews. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

If the initial inquiry leads to information that gives the juvenile court or CWS "reason to believe" the child is or may be an Indian child, the court or agency "shall make further inquiry regarding the possible Indian status of the child . . . as soon as practicable." (§ 224.2, subd. (e).) This requires CWS to: "(1) interview[] the parents and extended family members[,] (2) contact[] the Bureau of Indian Affairs (BIA) and State

4

Department of Social Services[,] and (3) contact[] tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe." (*Dezi C.*, *supra*, __ Cal.5th at p. __ [slip opn. at p. 14]; see § 224.2, subd. (e)(2)(A)-(C).)

A non-Indian parent has standing to challenge whether ICWA's inquiry requirements were met on appeal. (*In re Jonathon S.* (2005) 129 Cal.App.4th 334, 339.) We review such a challenge for substantial evidence. (*In re J.K.* (2022) 83 Cal.App.5th 498, 504.)

Here, we conclude substantial evidence does not support that CWS and the juvenile court made the requisite initial inquiries of the maternal side of N.C.'s family. Mother, the maternal grandmother, and a maternal aunt all denied that their family had Indian ancestry. But ICWA's initial inquiry requirements were not met simply because these family members denied Indian ancestry. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) CWS knew of at least five more maternal aunts and uncles, plus at least one maternal second cousin, but the record does not indicate that these relatives were asked about their ancestry. Nor did CWS inquire whether the maternal grandfather had Indian ancestry. (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 [error for CWS to fail to ask extended family members about Indian ancestry], disapproved on another point by *Dezi C.*, *supra*, __ Cal.5th at p. __, fn. 18 [slip opn. at p. 46]; see also *Dezi C.*, at p. __ [slip opn. at pp. 25-26] ["an adequate initial inquiry that reaches beyond parents to extended family members and others facilitates the discovery of Indian identity, and maximizes the chances that potential Indian children are discovered and tribes are notified"].) We thus cannot say that the agency made the

5

required "meaningful effort to locate and interview extended family members" about N.C.'s possible Indian ancestry. (*In re K.R.* (2018) 20 Cal.App.5th 701, 709; cf. *Dezi C.*, at p. __ [slip opn. at p. 27] [" 'those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked' "].) A "conditional reversal is [accordingly] warranted in order to develop the record and cure the inadequacy" of CWS's initial inquiry. (*Dezi C.*, at p. __ [slip opn. at p. 34].)

We also cannot say that substantial evidence supports the conclusion that CWS complied with its duty of further inquiry for the paternal side of N.C.'s family. When the paternal grandmother said that her family had Cherokee ancestry, CWS correctly contacted the BIA and relevant tribes to determine if N.C. was eligible for membership. But CWS was also required to interview other relatives about the family's Indian ancestry. (*Dezi C.*, *supra*, __ Cal.5th at p. __ [slip opn. at p. 14]; see § 224.2, subd. (e)(2)(A).) Father indicated that he has 12 siblings and that the paternal grandfather is still alive, but the record indicates that social workers only spoke with one of Father's siblings and made a single attempt to contact the grandfather. Because other family members could have provided additional information about the family's ancestry (*In re D.F.*, *supra*, 55 Cal.App.5th at pp. 566-567; *In re K.R.*, *supra*, 20 Cal.App.5th at pp. 707-708; cf. *Dezi C.*, *supra*, __ Cal.5th at p. __ [slip opn. at p. 28] [criticizing agency for failing to interview "readily available" family members]), a conditional reversal is required on this issue as well (*In re J.K.*, *supra*, 83 Cal.App.5th at pp. 511-512; cf. *Dezi C.*, at p. __ [slip opn. at p. 31] [discussing general need for conditional reversal to cure ICWA inquiry errors]).

6

DISPOSITION

The juvenile court's order terminating Mother's and Father's respective parental rights to N.C., entered February 1, 2024, is conditionally reversed, and the matter is remanded for compliance with the initial inquiry (for the maternal side of N.C.'s family) and further inquiry (for the paternal side of N.C.'s family) requirements of ICWA and related California law. After these inquiries have been made, the court shall make ICWA findings at a noticed hearing. If the court finds ICWA inapplicable, it shall reinstate its February 2024 order terminating parental rights. If the court concludes that ICWA does apply, however, it shall conduct further proceedings consistent with this opinion, including a new section 366.26 hearing that conforms with all relevant provisions of ICWA and the Welfare and Institutions Code.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

7

Gustavo Lavayen, Judge

Superior Court County of Santa Barbara

_____

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant B.J. (Father).

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant K.A.J. (Mother).

Rachel Van Mullem, County Counsel, Adam Crawford, Deputy County Counsel, for Plaintiff and Respondent.